hLEON A. CANNIZZARO; JR., Judge.
The defendant, Floyd M. Gibson; was convicted of one count of theft of an amount exceeding $500 in violation of La. R.S. 14:67 and of one count of the unauthorized practice of law in violation of La. R.S. 37:213. Mr. Gibson is appealing his convictions.
STATEMENT OF THE CASE
Mr. Gibson was initially charged with theft of more than $500 in violation of La. R.S. 14:67. A day later he was charged with practicing law without a license in violation of Lá. R.S. 37:213.[1] Mr. Gibson pleaded not guilty to both charges. A motion to suppress evidence was heard and denied. Mr. Gibson waived his right to a trial by jury and was'tried by the judge, who found him guilty as charged on both counts. Mr. Gibson was sentenced to serve one year at hard labor on the conviction of theft, and he was sentenced to serve sixteen months at hard labor on the conviction of practicing law without a license. A motion for a new trial and a motion to have his sentence imposed after a pre-sentence investigation report were both denied. Mr. Gibson was, however, granted the right to such a report, Lbut this was granted after the imposition of his sentence. Mr. Gibson has also filed a'motion in the district court for the reconsideration of his sentence; but the motion has been deferred pending the outcome of this appeal.
STATEMENT OF THE FACTS
After signing the Orleans Parish Criminal Sheriffs logbook of visitors to the Orleans Parish Prison and indicating in the logbook that he was an attorney visiting clients, Mr. Gibson met with Henry Williams, Jr., who had been arrested and incarcerated a few days earlier. According to Mr. Williams’ testimony at trial, Mr. Gibson “represented himself as an attorney and that he will help me with my case as far as getting it expunged off my record and help me get out of jail.” Mr. Gibson gave"Mr. Williams a business card, which had Mr. Gibson’s name and the words “attorney at law” printed on it. Mr. Gibson also asked Mr. Williams to have his wife contact him so that arrangements could be made for Mrs. Williams to pay Mr. Gibson. Mr. Gibson would then proceed to'have Mr. Williams released from jail.
After the, meeting with Mr. Williams, Mr. Gibson contacted Kristine T. Williams, Mr. Williams’ wife. Mrs. Williams went to Mr. Gibson’s office on three consecutive days and gaye him cash at each visit in the amount of $500, $500, and $239, respectively, for the purpose of obtaining her husband’s release from jail. Mr. Gibson gave Mrs. Williams receipts for each of the three payments, and these receipts were introduced into evidence at .trial.
Mrs. Williams testified at trial that her friend, Anndrea' Irons, a licensed bail bondsman, arranged for her husband to be released from jail on his own recognizance after Mr. Gibson failed to have Mr. Williams released. After her husband was released, Mrs. Williams told Mr. Gibson that she | ¡¡wanted the money that she had given him returned to her, because he had done nothing to obtain her husband’s release. Mr. Gibson agreed to give back to Mrs. Williams only $450 of the $1,239 that she had paid him. .
In response to Mr. Gibson’s refusal to return all of the money, Mrs. Williams *796 contacted the Office of the Orleans Parish District Attorney. The investigator in the economic crime unit of the district attorney’s office who was assigned to investigate Mrs. Williams’ complaint testified at trial. The investigator testified that she had contacted the Louisiana State Bar Association and had learned that Mr. Gibson had been disbarred. A certificate from the bar association to that effect was introduced into evidence at trial along with Mr. Gibson’s business card, containing the words “attorney at law”. The investigator testified that she had also contacted the Louisiana Department of Insurance and learned that Mr. Gibson was not a licensed bail bondsman. At trial representatives of both the bar association and the insurance department corroborated the investigator’s testimony.
The investigator further testified at trial that after she had completed her investigation, she obtained a warrant for Mr. Gibson’s arrest on charges of the unauthorized practice of law, the theft of $789[2], and the illegal consideration of bail bonds[3]. She stated that she then contacted Mr. Gibson, who came to the district attorney’s office where he was arrested.
Mr. Gibson represented himself at trial, and he offered a testimonial statement. He said that when he visited Mr. Williams in jail, he had just recently been disbarred and that he was at the prison to visit some former clients in connection with the transfer of their cases after his disbarment. Mr. | ¿Gibson also testified that he was in the process of starting a new business to support his family. He testified that he had contacted a number of people and had done research himself, regarding the type of business that he could conduct using the skills that he had learned as a lawyer without violating the prohibition against practicing law without a license. He stated that he was seeking a license as a bail bondsman and that he hoped to assist attorneys with investigational matters in connection with their cases.
Mr. Gibson testified that someone, whose name he could not recall, had referred him to Mr. Williams, and while he was at the prison visiting former clients, Mr. Gibson met with him. Mr. Gibson defended himself by saying that while both Ms. Irons and Mrs. Williams were in his office, Ms. Irons had offered to write a bail bond for Mr. Williams. He testified that he had returned to Mrs. Williams all of the money that she had given to him that was still in his possession at the time that she demanded a refund. According to Mr. Gibson’s testimony, the remainder of the money that Mrs. Williams had paid to him was given to Ms. Irons to write a bail bond.
Ms. Irons testified at trial that she was a licensed bail bondsman who obtained a recognizance bond from a judge so that Mrs. Williams’ husband could be released from jail. She stated that she had collected no money from Mrs. Williams. She also testified that she had not been in Mr. Gibson’s office at any time when Mrs. Williams was present. She did admit, however, that she had been to Mr. Gibson’s office in the past in connection with her bail bond business. Therefore, she admitted that Mrs. Williams could have been at Mr. Gibson’s office when she was there and that she might not have noticed Mrs. Williams’ presence.
*797 When Mrs. Williams was questioned, regarding Ms. Irons’ presence at Mr. Gibson’s office while she was there, Mrs. Williams stated that Ms. Irons 1 Bwas there on one occasion. She also testified that she was not surprised to see Ms. Irons at Mr. Gibson’s office, because she knew that Ms. Irons had worked with Mr. Gibson in the past in connection with obtaining bonds for his clients. Mrs. Williams further testified that she had never signed a retainer agreement with Mr. Gibson, but she did insist that Mr. Gibson told her that he was an attorney.
At the conclusion of the trial, the judge found Mr. Gibson guilty as charged on both counts. He was later sentenced to serve one year at hard labor for theft and sixteen months at hard labor for the unauthorized practice of law.
ERRORS PATENT
Sentencing Delay
La.C.Cr.P. art. 873 provides as follows:
If a defendant is convicted of a felony, at least three days shall elapse between conviction and sentence. If a motion for a new trial, or in arrest of judgment, is filed, sentence shall not be imposed until at least twenty-four hours after the motion is overruled. If the defendant expressly waives a delay provided for in this article or pleads guilty, sentence may be imposed immediately.
In State v. Augustine, 555 So.2d 1331, 1334 (La.1990), the Louisiana Supreme Court held that the trial courts failure to observe the twenty-four hour delay did not constitute harmless error even where the defendant failed to raise that issue on appeal. In Augustine, however, the defendant did challenge his sentence on appeal. The Supreme Court, therefore, held that the error in Augustine was not harmless.[4]
|fiIn State v. Collins, 584 So.2d 356 (La.App. 4th Cir.1991), this Court discussed the Augustine case as follows:
In State v. Augustine, 555 So.2d 1331 (La.1990), the Supreme Court held that the trial court’s failure to observe the twenty-four hour delay did- not constitute harmless error, even if the defendant did not raise that issue as error on appeal, where the defendant challenged his sentence on appeal. In the present case, defendant does not challenge his sentence and he does not raise as error the failure of the trial court to wait twenty-four hours before imposing sentence. Therefore, this error is harmless.
584 So.2d at 359.
In the instant case the trial court denied Mr. Gibson’s motion for a new trial immediately before he was sentenced. Because there is no indication in the record that Mr. Williams waived the delay required under La.C.Cr.P. art. 873, the failure to comply with that article is an error patent. Mr. Gibson, however, has not challenged his sentence, and he does not raise as error the failure of the trial court to wait twenty-four hours before imposing sentence. Therefore, this error is harmless under this Court’s ruling in the Collins case. See also, e.g., State v. Burbank, 2001-0831, p. 7 (La.App. 4 Cir. 2/27/02), 811 So.2d 1112, 1117.
Sentencing Error
Mr. Gibson was sentenced to sixteen months at hard labor on the convic *798 tion of practicing law without a license. The penalty for violating the provisions of La. R.S. 37:213 that prohibit the practice of law without a license do not, however, provide for sentencing at hard labor. La. R.S. 37:213(C) provides that “[a]ny natural person who violates any provision of this Section shall be fined not more than one thousand dollars or imprisoned for not more than two years, or both.” Therefore, it was an error for the trial court judge to have sentenced Mr. Williams to hard labor in connection with |7his conviction of the unauthorized practice of law. Mr. Williams’ sentence for that conviction must be vacated.
Double Jeopardy
This Court has recognized the violation of a defendant’s constitutional rights regarding double jeopardy as an error patent. State v. Thomas, 99-2219, p. 4 (La.App. 4 Cir. 5/17/00), 764 So.2d 1104, 1108; State v. Harris, 98-2932 (La. 4 Cir. 5/3/00), 761 So.2d 662. See also State ex rel. Adams v. Butler, 558 So.2d 552, 553, n. 1 (La.1990), where the Supreme Court stated that “[djefendant’s guilty pleas do not foreclose his double jeopardy challenge ... because the convictions for attempted first degree murder and the underlying felony of armed robbery constitute a violation of double jeopardy apparent on the face of the record.” (Emphasis added.) Because Mr. Gibson has raised the issue of double jeopardy as an assignment of error on appeal, we will address that issue as an assignment of error.
DISCUSSION
Assignment of Error
Mr. Gibson has made only one assignment of error on appeal. In this assignment, he has alleged that his convictions of both theft and the unauthorized practice of law violate the constitutional prohibitions against placing a person in jeopardy twice for the same offense.
Prohibition against Double Jeopardy
The United States Constitution provides that no person shall “be subject for the same offence to be twice put in jeopardy of life or limb.” U.S. Const, amend. V. The Louisiana Constitution provides that “[n]o person shall be twice placed in jeopardy for the same offense, except on his application for a new trial, when a mistrial is declared, or when a motion in arrest of judgment is sustained.” La. Const, art. 1, § 15.
| sArticle 591 of the Louisiana Code of Criminal Procedure also provides that “[no] person shall be twice put in jeopardy of life or liberty for the same offense” except in the case of a defendant’s motion for a new trial, an arrest of judgment, or a mistrial. La.C.Cr.P. art. 596 establishes the requirements for double jeopardy as follows:
Double jeopardy exists in a second trial only when the charge in that trial is:
(1) Identical with or a different grade of the same offense for which the defendant was in jeopardy in the first trial, whether or not a responsive verdict could have been rendered in the first trial as to the charge in the second trial; or
(2) Based on a part of a continuous offense for which offense the defendant was in jeopardy in the first trial.
Although article 596 speaks of double jeopardy in terms of a second prosecution for the same offense, the jurisprudence clarifies that the prohibition against double jeopardy also protects an accused from multiple punishment for the same criminal conduct. In State v. Murray, 2000-1258 (La.9/18/01), 799 So.2d 453, the Louisiana Supreme Court stated that *799 “[t]he Double Jeopardy Clauses of the federal and Louisiana constitutions not only prohibit successive trials for the same offense but also ‘protect! ] against multiple punishments for the same offense.’ ” 2000-1258, p. 3, 799 So.2d at 454, citing North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969) (footnote omitted).
Determination of Double Jeopardy
Two separate tests are used to determine whether doúble jeopardy exists. These tests are the Blockburger test, also known as the additional fact test, and the same evidence test.
|flThe Blockburger test was described as follows by the United States Supreme Court in Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306:
The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.
The Blockburger or “ ‘additional fact’ test requires that, when conduct constitutes a violation of two or more distinct statutory provisions, the provisions must be scrutinized to confirm that each demands proof of an additional fact.” State v. Sandifer, 95-2226, pp. 4-5, 679 So.2d 1324, 1329.
The same evidence test was explained by the Louisiana Supreme Court in State v. Steele, 387 So.2d 1175 (La.1980) as follows:
If the evidence required to support a finding of guilt of one crime would also have supported conviction of the other, the two are the same offense under a plea of double jeopardy, and a defendant
can be placed in jeopardy for only one. The test depends on the evidence necessary for conviction, not all the evidence introduced at trial.
Id. at 1177. The Supreme Court also explained in Steele that “[sjeparate statutory crimes need not be identical in constituent elements or in actual proof to be the same within the meaning of the constitutional prohibition.” Id. See also State v. Doughty, 379 So.2d 1088, 1090 (La.1980).
Louisiana courts have used ' both the Blockburger test and the same evidence test to evaluate claims of double jeopardy. See, e.g., State v. Murray, 2000-1258 (La.9/18/01), 799 So.2d 453; State v. Vaughn, 431 So.2d 763, 766 (La.1983); State v. Harris, 98-2932, p. 6 (La. 4 Cir. 5/3/00), 761 So.2d 662, 666. The same evidence test was recently used by the ^¡¡Louisiana Supreme Court. State v. Cotton, 2000-0850 (La.1/29/01), 778 So.2d 569.
Analysis
In the instant case Mr. Gibson was convicted of the unauthorized practice of law and the theft of more than $500. La. R.S. 37:213(A) proscribes the unauthorized practice of law as follows:
No ... person, who has not been first duly and regularly licensed and admitted to practice law by the supreme court of this state.shall:
(1) Practice-law.
[[Image here]]
(3) Hold himself ... out to the public as being entitled to practice law.
(4) Render or furnish legal services or advice.
(5) Assume to be an attorney at law or counselor at-law.
(6) Assume, use ... the title of lawyer, attorney ... in such manner as to convey the impression that he is a practitioner of law....
*800 La. R.S. 14:67(A) defines theft in relevant part as “taking of anything of value which belongs to another ... by means of fraudulent conduct, practices, or representations.” It is essential that there be “[a]n intent to deprive the other person permanently of whatever may be the subject of the misappropriation or taking.” Id.
Applying the Blockburger test in the instant case, we have determined that the prosecution of Mr. Gibson for the two offenses of the unauthorized practice of law and of theft violated the double jeopardy provisions in the federal and state constitutions. The Blockburger test requires that for double jeopardy to attach in the instant case, Mr. Gibson’s conduct in representing himself to be an attorney and taking money from Mrs. Williams under the pretense that he would perform legal work for her husband’s benefit had to violate both the prohibition against the unauthorized practice of law and the | n prohibition against theft by misrepresentation. We find that this conduct did violate both prohibitions.
Additionally, under the Blockburger test, unless the offense of the unauthorized practice of law and the offense of theft each require proof of an additional fact that the other does not, double jeopardy is applicable. In the instant case, the conviction for theft required additional facts that the conviction of the unauthorized practice of law did not. The additional facts that had to be proved were that Mr. Gibson took money from Mrs. Williams and that he had the intent to permanently deprive her of that money. The conviction for the unauthorized practice of law did not, however, require proof of an additional fact. The same facts that were used to prove the theft proved the unauthorized practice of law, and proof of the latter offense did not require the proof of any additional fact. Therefore, under the Blockburger test, Mr. Gibson’s right not to be exposed to double jeopardy was violated.
Applying the same evidence test, we reach the same result as we reached with the Blockburger test. The elements necessary to prove the theft charge against Mr. Gibson were (1) that he took money from Mrs. Williams, (2) that he induced her to give him the money by fraudulently representing himself to be an attorney, and (3) that he had an intent to deprive her permanently of the money taken. To prove that Mr. Gibson engaged in the unauthorized practice of law, it was necessary to prove that Mr. Gibson fraudulently represented himself to be an attorney. Therefore, the evidence necessary to prove the theft charge also proved the charge of the unauthorized practice of law. Because the same evidence was needed to prove both charges, the same evidence test was satisfied.
| ^Remedy for Violation of Double Jeopardy Prohibition
Because Mr. Gibson’s right not to be placed in jeopardy twice for the same offense was violated, one of his convictions must be vacated. In State ex rel. Adams v. Butler, 558 So.2d 552 (La.1990), the Louisiana Supreme Court stated that “[t]o remedy a violation of double jeopardy, this court has followed a procedure of vacating the conviction and sentence of the less severely punishable offense, and affirming the conviction and sentence of the more severely punishable offense.” Id. at 553. The Supreme Court also stated, however, that “[ajlthough this general rule will provide a clear resolution in most cases, re-sentencing according to the original sentencing scheme will not be possible in all cases.” Id. at 554.
In the instant case Mr. Gibson was sen *801 tenced to sixteen months[5] for the conviction of the unauthorized practice of law but only one year[6] for the conviction of theft. Because the trial court judge imposed a more severe penalty for the less severely punishable offense and a less severe penalty for the more severely punishable offense, the judge’s original sentencing scheme may be defeated if we proceed under the general rule and affirm Mr. Gibson’s sentence for the more severely punishable offense.
In the Adams case, the Supreme Court stated as follows:
When restructuring the sentence under the general rule is not feasible, courts should have the flexibility to implement the original sentencing scheme to the greatest extent possible. To accomplish this, courts should affirm the conviction with the more severe actual sentence, even though it may require vacating the conviction for the more severely punishable offense.
Id. (Emphasis in original.) See also State v. Thomas, 99-2219, p. 6 (La.App. 4 Cir.5/17/00), 764 So.2d 1104, 1108-9.
We believe that the instant situation is one in which the general rule regarding resentencing after a finding of double jeopardy should be modified as discussed in the Adams case to facilitate the trial court judge’s original sentencing scheme. Mr. Gibson’s conviction of theft should, therefore, be reversed, but his conviction of the unauthorized practice of law should be affirmed.
CONCLUSION
Based on the foregoing discussion, we hereby reverse Mr. Gibson’s conviction and vacate his sentence in connection with the theft charge. We hereby affirm Mr. Gibson’s conviction of the unauthorized practice of law, but we vacate the sentence imposed for that conviction, because Mr. Gibson was improperly sentenced to serve the sentence at hard labor. Finally, we remand this case so that the trial court can resentence Mr. Gibson for the conviction of the unauthorized practice of law. Because the trial court ruled that Mr. Gibson is entitled to a pre-sentence investigation report, the trial court should consider this report in determining Mr. Gibson’s sentence.
AFFIRMED IN PART; REVERSED IN PART; SENTENCES VACATED; AND REMANDED FOR RESENTENC-ING.

. A separate case was filed for each charge. The charges were consolidated in the district court, and they were tried together.

. Mrs. Williams gave Mr. Gibson $1,239, and he returned $450 to her, leaving $789 outstanding.

. That charge was refused by the district attorney's office, and Mr. Gibson was not prosecuted for the illegal consideration of bail bonds.

. In State v. Martin, 93-1915 (La.App. 4 Cir. 9/29/94), 643 So.2d 830, this Court noted that the Augustine case was legislatively overruled. A defendant must file, a motion to reconsider a sentence within 30 days of its imposition in accordance with' La.C.Cr.P. 881.1. Otherwise, the defendant is precluded from challenging the sentence on appeal. 93-1915, pp. 2-3, 643 So.2d at 832.

. The penalty for the unauthorized practice of law is imprisonment for not more than two years or a fine of not more than one thousand dollars or both. La. R.S. 37:213(C).

. The penalty for the theft of $500 or more is imprisonment with or without hard labor for not more than ten years or a fine of not more than three thousand dollars or both. La. R.S. 14:67(B)(1).