JAMES F. McKAY III, Chief Judge.
| j Defendant, Desmond Parker, was convicted of one count of tampering with a monitoring device in violation of La. R.S. 14:110.3, and one count of simple criminal damage to property in violation of La. R.S. 14:56. Defendant is appealing his convictions. For the reasons set forth below we affirm in part and reverse in part."

STATEMENT OF THE CASE

On January 15, 2015, Defendant was charged by bill of information with tampering with a monitoring device and with simple criminal damage to property in violation of La. R.S. 14:110.3 and La. R.S. 14:56,. respectively. The bill of information provides that on December 13, 2014, Defendant “committed criminal mischief by tampering with [an] EMP system” and *1244 “committed simple criminal damage to an EMP bracelet belonging to [the] Orleans Parish Sheriffs Office, with damage amounting to less than five hundred dollars.”
Defendant elected to have a judge trial on the criminal damage charge and a jury-trial on the tampering with the monitoring system charge. The trials were held simultaneously. Defendant was found guilty on both counts.
| ¡.Defendant filed a pro se motion for new trial, asserting that the convictions placed him in double jeopardy. The motion for new trial was denied, and Defendant was sentenced to one year imprisonment at the Department of Corrections for violating La. R.S. 14:110.8 and six months imprisonment at Orleans Parish Prison for violating La. R.S. 14:56, to run concurrently and with credit for time served. This appeal followed.

STATEMENT OF FACT

Deputy Gene Law III, assigned to the Orleans Parish Sheriffs Office Electronic Monitoring Program (“EMP”), testified that he attached an EMP monitor to Defendant’s ankle on December 10, 2014. He stated that prior to attaching the monitor he explained the rules and regulations regarding the electronic monitoring to Defendant. Defendant signed a contract acknowledging those terms. The last page of the contract contains the signatures of both Dep. Law and Defendant. Dep. Law identified both signatures in open court. Dep. Law testified that Defendant acknowledged that he understood the conditions of the contract when he signed the contract. Dep. Law stated that when the Defendant left, the monitor was securely attached to Defendant’s ankle and was working properly. When presented with an electronic monitor by the State, Dep. Law demonstrated how it is affixed to the ankle.
On cross-examination, Dep. Law stated that Defendant did not have an attorney present when he explained the terms of the contract. He stated that Defendant had to agree to conditions of the contract before being released from jail.
Deputy Terrance Calais, in charge of monitoring compliance with the EMP, testified that on December 13, 2014, he received a “strap tamper alert” from ^Defendant’s monitor. He explained that this alert occurs when a monitor’s strap has been cut and microfibers inside the strap send an alert to the device. Dep. Calais subsequently relocated to 1016 Louis Street to investigate the incident. When he arrived he observed a monitor and a strap that had been cut inside a parking lot. Dep. Calais identified the strap collected at the scene. He testified that he also unsuccessfully attempted to contact Defendant with the cell phone number he had provided. Dep. Calais prepared an arrest warrant and identified the warrant in open court. Defendant was later apprehended.
On cross-examination, Dep. Calais testified that Omnilink is the system that keeps track of the devices. He stated when he received a signal from Defendant’s monitor they were able to pinpoint the location and retrieve the monitor that was previously attached to Defendant. Dep. Calais said that the only damage to the device was the cut strap. He further explained that the monitor identified in court , by Dep. Law was not the actual one placed on Defendant, but an example or a “mock version of the ankle monitor” used by the EMP.

ERRORS PATENT

A review of the record for errors patent reveals none.

DISCUSSION

Defendant has made only one assignment of error on appeal. In this assign *1245 ment, he alleges that his convictions of both tampering with a monitoring device and simple criminal damage to property violate the constitutional prohibitions against placing him in double jeopardy. He argues that the very same action (cutting the strap) and evidence that constituted the tampering, charge was then used to find him guilty of the simple criminal damage to property charge.
14At the outset, we note that the State takes issue with the fact that Defendant did not raise double jeopardy via a motion to quash. However, La. C.Cr.P. art. 594 provides that “[djouble jeopardy may be raised at any time.” In this case, Defendant raised the issue in his pro se motion for new trial. Moreover, this Court has addressed a claim of double jeopardy raised for the first time on appeal. See, State v. Roe, 13-1434, p. 40 (La.App. 4 Cir. 10/8/14), 151 So.3d 838, 862 (recognizing on appeal a violation of a defendant’s right against double jeopardy to be an error patent); State v. Gibson,' 03-0647, p. 7 (La.App. 4 Cir. 2/4/04), 867 So.2d 793, 798 (noting that double jeopardy has been recognized as a patent error, but addressing it as an assignment of error because the defendant raised it as such, apparently for the first time on appeal). Accordingly, we will address the merits of Defendant’s assignment of error.
Both the Fifth Amendment to the United States Constitution and Article I, 15 of the Louisiana Constitution guarantee that no person shall be twice placed in jeopardy for the same offense. State v. Butler, 14-1016, p. 4 (La.App. 4 Cir. 2/11/15), 162 So.3d 455, 459; see also La. C.Cr.P. art. 591 (providing that “[n]o person shall be twice put in jeopardy of life or liberty for the same offense”). La. C.Cr.P. art. 596 establishes the requirements for double jeopardy as follows:
Double jeopardy exists in a second trial only when the charge in that trial is:
(1) Identical with or a different grade of the same- offense for which the defendant was in jeopardy in the first trial, whether or not a responsive verdict could have been rendered in the first trial as to the. charge in the second trial; or
(2) Based on a part of a continuous offense for which offense the defendant was in jeopardy in the first trial.
| ¡¡Although article 596 refers to double jeopardy in terms of a second prosecution for the same offense, the jurisprudence clarifies that the prohibition against double jeopardy also protects an accused from multiple punishment for the same criminal conduct. Gibson, 03-0647, p. 8, 867 So.2d at 798. - “The Double Jeopardy Clauses of the federal and Louisiana constitutions not only prohibit successive trials for the same offense but also ‘protect[ ] against multiple punishments for the same offense.’ ” State v. Murray, 00-1258, p. 3 (La.9/18/01), 799 So.2d 453, 454-55 (citing North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969)).
The tests utilized in determining double jeopardy were explained by this Court in State v. German, 12-1293, p. 28 (La.App. 4 Cir. 1/22/14), 133 So.3d 179, 198-199, as follows:
Louisiana courts use two separate tests to determine whether double jeopardy exists in a case: the Blockburger test and the same evidence test. State v. Gibson, 03-0647, p. 8 (La.App. 4 Cir. 2/4/04), 867 So.2d 793, 799; see Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Under the Blockburger test, “where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether *1246 there are two different offenses or only-one, is whether each provision requires proof of an additional fact which the other does not.” Gibson, 03-0647, p. 9, 867 So.2d at 799; State v. Smith, 95-0061, p. 4 (La.7/2/96), 676 So.2d 1068, 1069. Under the same evidence test, if the evidence required to support a finding of guilt of one offense would also have supported conviction of the other, the two offenses are the same under a plea of double jeopardy, and a defendant can be placed in jeopardy for only one. Smith, 95-0061, p. 4, 676 So.2d at 1069-1070; State v. Steele, 387 So.2d 1175, 1177 (La.1980). The same evidence test depends on the evidence necessary for a conviction, not all of the evidence introduced at trial. Id.
As the Supreme Court recognized in State v. Murray, 00-1258, p. 3, 799 So.2d at 455,
Louisiana’s somewhat broader “same evidence” test considers not only the material elements of each offense but also whether the ^evidence required to convict of one crime would also support conviction of the other, focusing “on the evidence necessary for conviction, not all the evidence introduced at trial.” State v. Steele, 387 So.2d 1175, 1177 (La.1980). The test precludes the state from “relabeling the offense to charge defendant a second time with the same criminal conduct.” Steele, 387 So.2d at 1178.
In the instant case, Defendant maintains that his convictions violated both tests. He asserts that cutting the strap of his EMP bracelet constitutes both the tampering with the monitoring system and the criminal damage to property. Thus, Defendant argues that the same evidence and identical facts were used to prove both charges.
Regarding the tampering charge, La. R.S. 14:110.3 requires proof that the defendant intentionally “defeat, degrade, tamper,' damage, alter, destroy, remove, disable, obstruct, or impair in any way the operation of any surveillance, accounting, inventory, or monitoring system of any nature or purpose.” La. R.S. 14:110.3(A). The statute also contains a non-exhaustive list of examples, which include, “[r]emov-ing, damaging, altering, destroying, disabling, impairing, obstructing, obscuring, covering, or infusing with any object, substance, or material any component of any surveillance, accounting, inventory, or monitoring system[;]” “[djisconnecting, interfering with, damaging, tampering with, or temporarily or permanently delaying or interrupting the internal or external signal or electronic wire or wireless analog or digital transmissions of any surveillance, accounting, inventory, or monitoring system[;]” and “[i]nterrupting any source of power for or degrading the performance in any manner of the whole or any part or component or operating software or hardware of any surveillance, accounting, inventory, or monitoring system.” La. R.S. 14:110.3(l)-(3). The statute defines “surveillance, accounting, inventory, or monitoring system” as “any. electronic, 17analog, digital, radio, or other system which generates, detects, senses, or records any or all of the following: video, audio, radio waves of any frequency, light in the visible light spectrum, ultraviolet light, infrared radiation, laser light or impulses, microwaves, magnetism, ionization,heat, smoke, water-, motion, or fire.” La. R.S. 14:110.3(B).
Simple criminal damage to property, pursuant to La. R.S. 14:56(A)(1), is the “intentional damaging of any property of another, without the consent of the owner, and except as provided in R.S. 14:55, by *1247 any means other than fire or explosion.”[1]
Under the Blockburger test, it appears that each statute requires proof of an element or fact which the other does not. La. R.S. 14:110.3 requires proof that the defendant intentionally damage,- tamper, disable, etc. a statutorily defined surveillance or monitoring system, whereas La. R.S. 14:56 does not require proof of this element. On the other hand, La. R.S. 14:56 requires proof that the property be damaged without the consent of the owner, whereas La. R.S. 14:110.3 does not. Additionally, the damage under La. R.S. 14:56 cannot be accomplished by fire or explosion. La. R.S. 14:110.3 does not contain such a restriction. Furthermore, La. R.S. 14:110.3 is contained in Part VI “Offenses Affecting the Public Generally,” Subpart D, “Offenses Affecting Law Enforcement” of the Criminal Code. La. R.S. 14:56, however, is included Part III, Subpart A, regarding “Offenses against Property by Violence to Buildings and Other Property.” Therefore, these statutes do not define the same offense for double jeopardy | ^purposes pursuant to Blockburger.
However, as this Court explained in State v. Monroe, 10-0194, p. 9 (La.App. 4 Cir. 12/8/10), 53 So.3d 626, 633, if there is not a finding of double jeopardy under the Blockburger test, then the court must look to Louisiana’s same evidence test, to see if the greater protection is implicated. The central idea of the same evidence test is that one should not be punished (or put in jeopardy) twice for the same course of conduct. Id. at p. 10 (citing State v. Steele, supra).
Here, the evidentiary focus of the facts adduced at trial was that Defendant cut the strap of the EMP bracelet. Damage to the monitor was without the consent of the Sheriffs Office, as it would disable or interrupt the electronic- surveillance. -The monitor was not damaged by fire, or explosion ¡but by cutting the strap, which connected the device to Defendant’s person. Arguably, if Defendant removed the monitoring system by fire or explosion, the “same evidence”.test would not have been met. However, in this' case, the cutting of the strap of the EMS bracelet establishes both tampering and .criminal damage. Thus, the two charges arise from the same conduct.
In sum, using the above principles on double jeopardy and applying them to the specific facts of this case, we find.that the evidence required to support the conviction of tampering with the monitoring system would also have supported the conviction for simple criminal damage to property. Thus, under the “same evidence” test, the two are the same offense under a plea of double jeopardy, and Defendant can be placed in jeopardy for only one.
To remedy a violation of double jeopardy, the reviewing court normally vacates the conviction and sentence of the less severely punishable offense and affirms the conviction and sentence of the more severely punishable offense. State v. Gibson, 03-0647, p. 12, 867 So.2d at 800 (citing State ex rel. Adams v. Butler, 558 So.2d 552, 553 (La.1990)); see also State v. German, 12-1293, p. 31 n. 9, 133 So.3d at 200. Here, the less severely punishable offense is simple criminal damage to property. La. R.S: 14:56(B)(1) provides that when a defendant Is convicted of simple criminal damage to property where the damage to property is less than five hundred dollars, he shall be fined not more than one thousand dollars or imprisoned *1248 with or without hard labor for not more than six months, or both. The more severely punishable offense is tampering with monitoring system, which pursuant to La. R.S. 14:110.3(C)(1), is punishable by a fíne of not more than one thousand dollars, imprisonment with or without hard labor for not more than one year, or both. Accordingly, Defendant’s conviction and sentence for simple criminal damage to property is vacated. The conviction and sentence for tampering with the EMP device is affirmed.

CONCLUSION

For the foregoing reasons, we find that Defendant’s convictions on both charges violated double jeopardy. Thus, we reverse .Defendant’s conviction and vacate his sentence in connection with the simple criminal damage to property charge. We affirm Defendant’s conviction and sentence for tampering with a monitoring device.
AFFIRMED IN PART; REVERSED IN PART

. La. R.S. 14:55 defines aggravated criminal damage to property as “the intentional damaging of any structure, watercraft, or. movable, wherein it is foreseeable that human life might be endangered, by - any means other than fire or explosion-.” ■ ■ ''